IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID JACOBS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 03 C 3549 |
| | ) | |
| | ) | Judge Mark R. Filip |
| XEROX CORPORATION LONG TERM | ) | |
| DISABILITY INCOME PLAN, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

David Jacobs ("Jacobs" or "Plaintiff") brings this action against the Xerox Corporation Long Term Disability Income Plan ("Plan" or "Defendant"). Plaintiff has filed a three-count second amended complaint. (D.E. 10.) In Count I, Plaintiff alleges that he has been wrongfully denied long-term disability ("LTD") benefits in violation of § 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B) ("Section 502"). In Count II, Plaintiff alleges that he is entitled to civil statutory penalties because the ERISA plan administrator failed, upon a suitable request, to provide Plan documents Plaintiff allegedly requested in a timely fashion, pursuant to 29 U.S.C. § 1132(c). In Count III, Plaintiff alleges that Defendant wrongfully interfered with Plaintiff's attainment of a right under the Plan, in violation of § 510 of ERISA ("Section 510"). Defendant has moved for summary judgment and Plaintiff has filed a cross-motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56. As explained below, Defendant's motion (D.E. 25) is granted in part and denied in part, and Plaintiff's motion (D.E. 37) is denied.

I.    FACTS[1]

    Plaintiff was an employee of the Xerox Corporation from the end of 1996 through 2001.

(Defendant's Statement of Undisputed Facts ("Def. SF") ¶ 1; Plaintiff's Statement of Undisputed

Facts ("Pl. SF") ¶ 6.)  As a benefit of his employment, Plaintiff participated in the Xerox

Corporation Long-Term Disability Plan and a separate short-term disability plan.  (Pl. SF. ¶¶ 8,

12.)  According to a summary plan description ("SPD") given to Plaintiff, the short-term

disability plan "continues to pay [an employee's] full pay if [he or she] is unable to work due to

illness, injury, or pregnancy, and [he or she] satisfies the other disability requirements."  (*Id*. at

96.)  The plan provides short-term disability benefits for the first five months of a disability.

(*Id*.)  The short-term plan affects employees as follows:

> During your five months of short-term disability benefits, you are treated as if you are on
> salary continuation.  That is, your job stays intact (subject to the needs of the business)
> and you continue to participate in the other benefit plans. . . .  You can also continue to
> participate in the 401(k) Savings Plan and receive profit sharing, if and when applicable.

(*Id*.)

    After the first five months of a disability, from months six through twenty-nine of a

disability, Xerox provides benefits through the Xerox Long-Term Disability Income Plan.  (*Id*. at

---

[1] The relevant facts are taken from the Defendant's Local Rule 56.1 ("L.R. 56.1")
statement of facts and exhibits, Plaintiff's response to Defendant's statement of facts, Plaintiff's
LR 56.1 statement of facts, and Defendant's response to Plaintiff's statement of facts.  The
Seventh Circuit has "consistently and repeatedly upheld a district court's discretion to require
strict compliance" with L.R. 56.1.  *Bordelon v. Chicago Sch. Reform Bd. Of Trs.*, 233 F.3d 524,
527 (7th Cir. 2000); *see also Malec v. Sanford*, 191 F.R.D. 581, 584 (N. D. Ill. 2000) (failure to
adhere to L.R. 56.1 requirements, including citation to specific evidentiary materials justifying
denial, is equivalent to admission).  Where the parties disagree over relevant facts, the Court sets
forth the competing versions.  In addition, the Court, as it must, resolves genuine factual
ambiguities in the respective non-movant's favor.  *Foley v. City of Lafayette*, 359 F.3d 925, 928
(7th Cir. 2004).

97.)  In relevant part, the long-term disability plan is implicated "if your disability lasts longer than five months and meets the applicable definition of disability."  (*Id*.)  Significantly, Section 5.3 of the 1999 Restatement of the Long-Term Disability Income Plan provides specific times when an employee's benefits terminate:

> Benefits under this Plan will terminate on the earliest of:
> . . .
> (f) the date that the employment relationship terminates;
> (g) the date the Employee is placed on an approved unit closing, layoff, military or personal leave of absence;
> . . . .

(D.E. 13, Attachment 2 at 10-11; Def. SF ¶ 15.)[2]  Pursuant to the Plan, a Plan Administrator was given the authority to "[c]onstrue the Plan and any Trust Agreement thereunder and determine eligibility for, and extent of, benefits."  (D.E. 13, Attachment 2 at 16.)  Moreover, the Plan states that "the plan administrator is hereby authorized to interpret the terms and conditions of the Plan and empowered to promulgate any uniform rules, regulations, and schedules of general applicability and to adopt such forms when [he] deems necessary in order to carry out the purposes of the Plan."  (Def. SF ¶ 19; D.E. 13, Attachment 2 at 16.)  In the event a claim is denied, the Plan Administrator was charged with providing notice as to why the claims had been

---

[2] L.R. 56.1 provides that with each motion for summary judgment filed pursuant to Federal Rule of Civil Procedure 56, the moving party should also file "any affidavits and other materials" referenced.  L.R. 56.1(a)(1).  Specifically, sworn or certified copies of all papers or parts thereof referred to should be included.  *See* Fed. R. Civ. P. 56(e).  The Court notes that neither party attached to its motion for summary judgment a copy of the Administrative Record.  Rather, they relied on the fact that it had been filed and attached to an unrelated motion by defendant to quash a notice of deposition and related discovery requests in front of Magistrate Judge Keys.  Since neither party raised this issue, in the interest of judicial efficiency, the Court will treat the Administrative Record as having been properly attached and filed.  When the Court needs to refer to the administrative record, it will do so by citing to the record's location as an attachment to D.E. 13.

denied and with reviewing claims that had previously been denied in whole or in part and "send[ing] to the claimant . . . notice of the grant or denial." *(Id.* at 17-18.)

Because of a previous stroke, complications from that stroke, and other ailments, Plaintiff received short term disability benefits nearly continuously from January 23, 2001, to May 21, 2001. (Pl. SF ¶¶ 32-40.) Plaintiff then returned to work, but he was on short-term disability benefits again from October, 2001 through March 3, 2002. (Pl. SF ¶¶ 41-43, 56; Def. SF ¶¶ 4; D.E. 41 at 1.) On November 1, 2001, Plaintiff was given notice that he was being terminated as part of an involuntary reduction in force. (Def. SF ¶ 2.) At the time of the termination, Plaintiff was receiving short term disability benefits. (*Id.* ¶ 3.) On December 3, 2001, Plaintiff signed a form entitled "The Reduction in Force Salary Continuance Payment Option Election" (Pl. SF ¶47), and on December 13, 2001, he signed another form that released Xerox from all claims that he might have had that arose prior to December 13, 2001. (Pl. SF ¶ 53; Def. SF ¶ 5.) In effect, these forms allowed Plaintiff to receive a "salary continuation" at his regular pay rate for an additional seven and one-half weeks, even though he had been terminated from his job, as consideration for signing a general release of all claims he might have against Xerox. (Def. SF ¶¶5-6; Pl. SF ¶¶ 48, 53.) By the terms of this general release, Plaintiff specifically "release[d] Xerox from any and all claims, even if I don't know about the claim at this time, based on anything that has occurred prior to the date I sign this Release," and the release specifically referenced putative claims arising under, among other things, the ERISA statute. (D.E. 13, Attachment 1 at 0015.) The general release further stated that Plaintiff had an opportunity to consult with counsel of his choice before signing it, that he had the opportunity to take up to 45 days to evaluate the release from the date it was provided (Plaintiff appears to have actually taken

44 days), that Plaintiff had sufficient time to evaluate whether he wanted to sign the release, and that Plaintiff could change his mind for seven days even after signing the release so as to back out of the deal he struck with Xerox. (*Id.* at 0016.)

Plaintiff's short-term disability benefits expired on March 3, 2002. (Pl. SF ¶¶ 41-43, 56; Def. SF ¶ 4.) On March 5, 2002, Plaintiff's counsel wrote a letter to the Human Resources Manager at the Xerox Corporation, requesting more information about the status of Plaintiff's disability claims. (Pl. SF ¶ 54.) The letter was passed on to the general counsel's office at Xerox. (D.E. 13, Attachment 1 at 0007.) On March 12, 2002, Ms. Hermina Glaser in Xerox's office of general counsel responded to the letter, stating that Plaintiff had not qualified for long-term disability benefits. (Pl. SF ¶ 55.) Afterwards, Plaintiff and Ms. Glaser had a conversation regarding the status of Plaintiff's benefits. (*Id*. ¶ 57.) Plaintiff's counsel followed up this discussion by faxing a letter to Ms. Glaser that at least purported to confirm their conversation and stated that Ms. Glaser had agreed to forward all documents pertaining to "Plaintiff's entitlement to short term and long-term disability benefits." (*Id*.)

On May 8, 2002, Plaintiff's counsel again contacted Ms. Glaser, indicating that she had not yet provided the documents. (*Id*. ¶ 58.) Eleven months later, in a letter dated April 4, 2003, Plaintiff's counsel contacted Lawrence Becker, the Plan Administrator, and informed him of Plaintiff's alleged entitlement to benefits under the Plan; this April 4, 2003 letter attached all of the previous documentation submitted to Xerox. (*Id*. ¶ 60.) Plaintiff alleges that this correspondence "requested relevant plan documents" (*id.*), but Defendant denies that the correspondence requested any documents. (D.E. 52 ¶ 60.) Both parties agree, however, that the letter stated:

Please consider this letter a claim for benefits under the plan. I would appreciate it if you would forward all of the aforementioned documents to the appropriate person at Xerox so that Mr. Jacobs may perfect his claim for long-term disability benefits. I would also appreciate it if you would respond to this letter and provide the name of the proper individual to expedite the claim process.

(D.E. 13, Attachment 1 at 0001.) Plaintiff applied for and was denied long-term disability benefits ("LTD"). (D.E. 52 ¶ 62.) He disputed the denial by appealing to the Plan Administrator, Lawrence Becker, on August 1, 2003. (Def. SF ¶¶ 7-9; Pl. SF ¶¶ 59-62.)

Ultimately, Becker denied the appeal. (Def. SF ¶¶ 9-10; Pl. SF ¶ 64.) In his role as Plan Administrator, Becker reviewed the LTD Plan, documents presented by the attorneys, the general release signed by Plaintiff, Plaintiff's employment records, and other documents signed by Plaintiff. (D.E. 13, Attachment 1 at 0089.) In denying Plaintiff's claims, Becker determined that Plaintiff was not qualified to receive LTD benefits because the Plan only allowed "employees" to receive benefits, and at the time of his application, Plaintiff was not an employee, since he had been laid off. (Def. SF ¶¶ 11, 17; Pl. SF ¶ 68.) Becker interpreted the term "layoff" to include "all involuntary terminations." (Def. SF ¶ 16.) In this case, Becker held that at the time Plaintiff first received his salary continuance as part of his severance, his status as an eligible employee under the LTD plan terminated pursuant to Section 5.3 of the LTD plan. (D.E. 13, Attachment 1 at 0089-0090.) He also found that Plaintiff's "continued receipt of short-term disability benefits (non-ERISA) benefits in no way waived the eligibility requirement of the [LTD] Plan." (*Id*. at 0090.) Additionally, and independently, Becker found that the general release Plaintiff signed constituted a valid basis for the denial of benefits. (Pl. SF ¶ 69.)

Becker also denied Plaintiff's claim under Section 510, because, as Plan Administrator, Becker "played no role in [Plaintiff's] separation from Xerox" and could not respond to

Plaintiff's allegations of an improper motive.  (D.E. 13, Attachment 1 at 0090.)  Becker did

declare, however, that his denial of Plaintiff's appeal was based "solely on the terms of the

[LTD] Plan," and not due to any other reason.  (*Id*.)  Becker also found that the relevant Plan

documents were provided as soon as the administrator was aware that they had been requested.

(Pl. SF ¶ 70.)

On May 23, 2003, Plaintiff filed his first complaint against Xerox Corporation Long

Term Disability Income Plan.  (D.E. 1.)  He filed a second amended complaint on September 29,

2003.  (D.E. 10.)

II.     STANDARD OF REVIEW

Under ERISA, the judicial standard of review for benefit determinations hinges on

whether the plan administrator or fiduciary has been granted discretion in making the benefit

determination.  *See*, *e.g.*, *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  As a

default, courts review benefit determinations under ERISA through the application of a *de novo*

standard.  *Id*.  However, if the administrator or fiduciary is given discretionary authority to

determine eligibility for benefits, the decision will be reviewed under the deferential arbitrary and

capricious standard.  *Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771,

773 (7th Cir. 2003).  For a plan to convey enough discretion to a plan administrator to trigger the

more generous review, the plan "'must contain language that . . . indicates with the requisite if

minimum clarity that a discretionary determination is envisaged.'" *Coles v. LaSalle Partners Inc.*

*Disability Plan*, 287 F. Supp. 2d 896, 900 (N.D. Ill. 2003) (quoting *Herzberger v. Standard Ins.*

*Co.*, 205 F.3d 315, 331 (7th Cir. 2000)).

"Under the arbitrary and capricious standard, determinations will be overturned by the

court only when they are 'unreasonable, and not merely incorrect.'" *Herzberger*, 205 F.3d at 329; *accord, e.g.*, *James v. General Motors Corp.*, 230 F.3d 315, 317 (7th Cir. 2000) (stating that a benefit determination will only be found arbitrary and capricious when "downright unreasonable," and explaining that the reviewing court's role is a limited one); *Chojnacki v. Georgia-Pacific Corp.*, 108 F.3d 810, 816 (7th Cir. 1997) (teaching that the reviewing court does not interfere with the plan administrator's decision, even if it is not the result the court would have arrived at in the first instance, unless the administrator "not only made the wrong call, but . . . a 'downright unreasonable' one."); *Hupp v. Metromail Corp. Special Severance Plan*, 133 F. Supp. 681, 688 (N.D. Ill. 2001) (Castillo, J.) (noting that the arbitrary and capricious standard is the "least demanding form of judicial review" and is "extremely deferential," but further noting that such review is "not a rubber stamp.") (collecting and quoting multiple Seventh Circuit cases; all internal citations omitted).  As the Seventh Circuit taught in *Hess v. Hartford Life & Accident Insurance Company*, 274 F.3d 456 (7th Cir. 2001), the "plan administrator's decision should not be overturned as long as (1) it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, (2) the decision is based on a reasonable explanation of relevant plan documents, or (3) the administrator has based its decision on a consideration of the relevant factors that encompass the important aspects of the problem." *Id*. at 461; *accord, e.g.*, *Cuddington v. N. Ind. Pub. Serv. Co.*, 33 F.3d 813, 817 (7th Cir. 1994).

The Court does not ask whether the court, a jury, or a different plan administrator would or could have granted the benefits; questions of judgment or choices between competing reasonable outcomes are left to the plan administrator. *See, e.g.*, *Patterson*, 70 F.3d at 505 n.3. In other words, when the arbitrary and capricious standard is applied, the decision of the

administrator will be left undisturbed so long as the administrator "'makes an informed judgment and articulates an explanation for it that is satisfactory in light of the relevant facts. . . .'" *Wolff v. Continental Cas. Co., a CNA Co.*, No. 03 C 4667, 2004 WL 2191579, at *9 (N.D. Ill., Sep. 28, 2004) (quoting *Loyola Univ. of Chicago v. Humana Ins. Co.*, 996 F.2d 895, 898 (7th Cir. 1993)). When considering a claim under the arbitrary and capricious standard, the court may refer only to that evidence which was before the decisionmaker at the time of the decision at issue. *See Perlman v. Swiss Bank Corp.*, 195 F.3d 975, 982 (7th Cir. 2000) (defining the boundaries of permitted discovery where a plan beneficiary challenges the disability determination); *accord Krawczyk v. Harnischfeger Corp.*, 41 F.3d 276, 279 (7th Cir. 1994).

In this case, the LTD Plan explains that the plan administrator has discretionary authority to interpret the terms of the Plan. The heading of Section 7.3 of the Plan bluntly states that "The Plan Administrator Interprets the Plan." (D.E. 13, Attachment 2 at 16.) Section 7.3 goes on to explain the plan administrator's role:

> In addition to the power and authority delegated by the Plan Administrator elsewhere in the Plan, the Plan Administrator is hereby authorized to interpret the terms and conditions of the Plan . . . .

(*Id.*) While this is not a verbatim recitation of the paradigmatic safe harbor noted in *Herzberger*, it is enough to notify readers that the plan administrator enjoys discretion and has the power to interpret the language of the policy.[3]

---

[3] Section 4.5 of the Plan further states, confirming the import of the language from Section 7.3 quoted above, that "[t]he determination of whether an Employee has incurred a covered disability and has complied with all of the conditions for receiving, and continuation of, benefits shall be made by . . . the Disability Administrator, as appropriate, in its sole discretion." (*Id.* at 9.) Section 4.5 further confirms that the standard of review is for abuse of discretion and not *de novo*.

9

Plaintiff alleges that the appropriate standard of review is *de novo*. In his cross-motion for summary judgment, Plaintiff does no more than make the contention and state that he incorporates the arguments made in Plaintiff's Memorandum in Opposition to Defendant's Motion to Quash—arguments that were already rejected in the past. (D.E. 41 at 6.) Specifically, during the discovery phase in this case, Magistrate Judge Keys (upon referral from Judge Anderson, who had this case before it was reassigned to this Court) held that the LTD Plan satisfied all the concerns in *Herzberger*; further, Judge Keys rejected Plaintiff's other contentions, variously discussed in his thoughtful opinion. (D.E. 19 at 2.) This Court concurs with Magistrate Judge Keys's analysis of existing caselaw as applied to the instant case. *See Jacobs v. Xerox Corp. Long Term Disability Income Plan*, No. 03 C 3549, 2004 WL 549117, at *2 (N.D. Ill. Mar. 19, 2004) Consequently, the Court will review Becker's denial under the arbitrary and capricious standard.

III.     SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The nonmovant cannot rest on the pleadings alone, but must identify specific facts, *see Cornfield v. Consol. High Sch. Dist. No. 230*, 991 F.2d 1316, 1320 (7th Cir. 1993), that raise more than a scintilla of evidence to show a genuine triable issue of material fact. *See Murphy v. ITT Educ. Servs., Inc.*, 176 F.3d 934, 936 (7th Cir. 1999) (citation omitted). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*,

10

477 U.S. 242, 248 (1986). The Court views the record and all reasonable inferences drawn therefrom in the light most favorable to the nonmovant. *See* Fed R. Civ. P. 56(c); *Foley* 359 F.3d at 928. The party opposing summary judgment may not rest upon the pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *See Anderson*, 477 U.S. at 248. There is no genuine issue for trial unless there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Id*.

As courts in this district have repeatedly noted, when, as here, parties have filed cross-motions for summary judgment, the analytical endeavor can be a Janus-like one that can require consideration of any legitimate factual disputes in the record as they bear on each movant's respective summary judgment claims. *See*, *e.g.*, *Northern Contracting Inc. v. State of Illinois*, No. 00 C 4515, 2004 WL 422794, *46 (N.D. Ill. March 3, 2004) (Pallmeyer, J.) ("In cases such as this involving cross-motions for summary judgment, 'the court must extend to each party the benefit of any factual doubt when considering the other's motion–a Janus-like perspective . . . .'") (quoting *Buttitta v. City of Chicago*, 803 F. Supp. 213, 217 (N.D.Ill.1992)). The Court proceeds accordingly.

IV.   DISCUSSION

   A.   Count I: Claim for Benefits

      1.   Plan Administrator's Decision

As to Count I of Plaintiff's Second Amended Complaint, Defendant moves for summary judgment on the grounds the Plan Administrator's decision was not arbitrary and capricious. Defendant asserts that Becker rightly concluded that at the relevant time, Plaintiff was not entitled to LTD benefits because he was no longer an eligible employee. (D.E. 26 at 5.)

Plaintiff contends that the Plan Administrator's decision to deny him long-term disability benefits was arbitrary and capricious. Specifically, he argues that he was a participant in the LTD Plan, and thus has standing because he completed the maximum short-term disability period and waiting period to be eligible to receive LTD, and pursuant to the Summary Plan Description, should be considered an "inactive employee" for purposes of receiving LTD, even after he was laid off. (D.E. 41 at 11-14.) He further maintains that since the SPD states that disability benefits end when "'you terminate your employment through separation or layoff'" (D.E. 57 at 4 (quoting SPD at 96)) and the LTD terminates all benefits when "the employment relationship terminates [or] the date the Employee is placed on . . . layoff," the implication necessarily is that Plaintiff's LTD benefits could only terminate upon an affirmative action by Plaintiff and not anyone else. (D.E. 57 at 4.) Plaintiff also emphasizes the terms of the salary continuance form he signed, which stated that "[d]uring salary continuance, [he is] treated as an 'inactive' employee of Xerox and [he] will be covered by the Xerox benefits" he had previously elected. (D.E. 13, Attachment 1 at 0097.)

Conversely, Defendant claims that the decision was not arbitrary and capricious, and thus should not be reversed by this Court. Defendant contends that pursuant to Section 5.3 of the Plan, Plaintiff's benefits terminated at the date he was laid off. (D.E. 26 at 5-6.) Moreover, Defendant asserts that just because Plaintiff was a "participant" under ERISA and thus has standing to sue, mere standing does not entitle Plaintiff to prevail as to the claimed benefits, since "the terms of the plan (and the plan administrator's interpretation thereof) [control] benefits eligibility . . . ." (*Id*. at 6.) Finally, Plaintiff contends that since the policy providing short-term benefits is wholly separate from the policy providing long-term benefits, the fact that Plaintiff

received short-term benefits after he was laid off has no impact on his eligibility for long-term benefits. (*Id*. at 7.)

Becker, the plan administrator, reviewed Plaintiff's appeal of his claim denial and informed Plaintiff of his findings on August 19, 2003. (D.E. 13, Attachment 1 at 0089.) Becker upheld the denial, essentially explaining his reasons in the terms that Defendant asserts now, particularly the arguments about standing, the meaning of "participant," and the relationship between short-term and long-term benefit plans. (*Id*. at 0089-90.). Perhaps most importantly, Becker found:

> Within the scope of my role as Plan Administrator, I interpret layoff [in Section 5.3 of the LTD Plan] to include all involuntary terminations; therefore, at the time you first received salary continuance, as consideration for signing the General Release, your status as an eligible employee under the LTD Plan terminated. Only employees are eligible for benefits under the LTD Plan.

(*Id*.)

To review a claim decision, the Court evaluates whether the plan administrator (1) considered the factors relevant to the decision, and (2) articulated an explanation that makes a "rational connection" between the issue, the evidence, the text, and the decision made. *See, e.g., Exbom v. Central States, S.E. and S.W. Areas Health and Welfare Fund*, 900 F.2d 1138, 1142-43 (7th Cir. 1990). The Court is also mindful of the Seventh Circuit's teaching that benefits determinations "that supervene on interpretation of key terms . . . invite the exercise of discretion, being inescapably particularistic and fact-bound." *Wal-Mart Stores, Inc. Assocs.' Health and Welfare Plan v. Wells*, 213 F.3d 398, 403 (7th Cir. 2000); *accord Hupp*, 133 F.Supp.2d at 687. As explained below, the Court grants summary judgment for Defendant on this Count.

Unlike some eligibility cases, the instant case does not concern itself with technical, scientific data. The factual record is essentially undisputed by the parties. In the decision under review, Becker, the plan administrator, explained that he had considered myriad relevant documents, including the LTD Plan, documents presented by the attorneys (Plaintiff was represented), the general release signed by Plaintiff, Plaintiff's employment records, and the claim denial letter Plaintiff previously received. (*See* D.E. 13, Attachment 1 at 0089.) In his opinion, Becker provided a concise description of the passages he deemed relevant and demonstrated why they were relevant. Consequently, this Court holds that Becker adequately considered the factors relevant to his decision—whether Plaintiff was eligible for LTD.

Moreover, in his letter denying Plaintiff's appeal, Becker provided an articulation that made a rational connection between the interpretive issue and the potentially relevant documents. He concluded that—under Section 5.3 of the LTD Plan, which states that eligibility for LTD benefits terminates on the date an employee is laid off—"layoffs" included all involuntary terminations, and thus included Plaintiff's termination through the IRIF. (*Id.* at 0089.) This interpretation seems consistent with the generally understood meaning of the word "lay off,"[4] and it certainly is an interpretation that is not "downright unreasonable," as precedent requires in this area of limited judicial review. Becker also reasonably concluded that Plaintiff was laid off at the time he received his first salary continuance—*i.e.*, after he had been notified of the layoff and

---

[4] *See generally* American Heritage Dictionary of the English Language 994 (4th ed. 2000) (defining noun form of "lay off" as, *inter alia*, "the act of suspending or dismissing an employee, as for lack of work or because of corporate reorganization"; *see also* Black's Law Dictionary 906 (8th ed. 2004) (defining "layoff" as "[t]he termination of employment at the employer's instigation; esp. the termination—either temporary or permanent—of many employees in a short time . . .").

severed his employment relationship with Xerox.[5] (*Id.* at 0089-0090.)  The result of this conclusion was that Plaintiff was ineligible for later, long-term benefits under the LTD Plan.  (*Id.* at 0090.)

Becker also rationally explained his view that although the salary continuance form entitled Jacobs to "inactive employee" status, and although Plaintiff received short-term disability benefits under the IRIF package he was provided, that did not justify Plaintiff's position concerning LTD benefits because it did not waive the eligibility requirements of the LTD plan.  (*Id.*)  Or, put differently, Becker concluded that any inactive status for Plaintiff did not give Plaintiff *more* than what he would have been entitled to as an active employee, and consequently, Jacobs's enjoyment of Xerox benefits during his salary continuation period must be understood to come with the same terms, conditions, and eligibility requirements that accompanied active employees' benefits, including Section 5.3 of the Long-Term Disability Plan. The plan administrator explained that he viewed the provision of continued short-term disability benefits, notwithstanding that no medical case management evaluations were performed or required, as "an accommodation in connection with the reduction in force package provided to you."  (D.E. 13, Attachment 1 at 0090.)  Becker stated that such "continued receipt of short-term disability payments (non-ERISA benefits) in no way waived the eligibility requirement of the LTD Plan," under which Plaintiff did not qualify.  (*Id.*)  Since Section 5.3 terminated Plaintiff's eligibility for LTD benefits at the time of his layoff, Becker decided, Plaintiff was ineligible for long-term benefits under the salary continuation form.  Plaintiff has not shown that Becker's

_____

[5] By that time, Plaintiff also had signed the general release.  By its terms, that general release permitted Plaintiff to reapply to Xerox after a period of one year for direct employment or for engagement as a contract worker or consultant.  (D.E. 13, Attachment 1 at 0016.)

conclusion on this score was "downright unreasonable," as precedent requires.

Plaintiff also attempts to argue his position based on language of the summary plan description (SPD) that he contends is in tension with the plan administrator's interpretive decision. This argument is unavailing. Plaintiff repeatedly suggests (e.g., D.E. 57 at 4, 5, 8-9) that page 96 of the SPD, which relates to entitlement for short-term benefits (and not the long-term benefits at issue), dictates that the plan administrator's interpretation is arbitrary and capricious.[6] It is difficult at times to follow Plaintiff's argument as presented, because it appears that Plaintiff may be not be citing the portion of the SPD on which he actually relies.[7] However, giving all benefit of the doubt about the framing of the argument to Plaintiff, it appears that he would seek to take a single phrase from the SPD—stating that disability benefits end, *inter alia*, when "You [the employee] terminate your employment through separation or retirement" (SPD at 110)—and argue by negative inference that the phrase implies that Plaintiff was not able to lose any otherwise applicable potential for LTD benefits unless *he* chose to retire or leave the

---

[6] In that regard, Plaintiff repeatedly quotes language to the effect that the SPD states that disability benefits end when "'you [the employee] terminate your employment.'" (D.E. 57 at 4, 8-9 (citing and quoting SPD at 96).) The Court cannot locate this language on the cited page of the SPD. In any event, as explained above, even if the language appears in a snippet of page 96 the SPD describing short-term benefits, other portions of page 96 (see note 8 *infra*) dispel the notion that the employee's job is safe from other company actions such as job eliminations that might befall any other employee who is not on disability status. Furthermore, as explained further below, the "when 'you terminate your employment'" clause hardly dictates the interpretive understanding that it grants Plaintiff the unilateral right to decide whether his employment status with the company will terminate, when other provisions of the SPD and LTD Plan reflect that the company can still terminate the employee.

[7] Page 110 of the SPD appears to contain the language which Plaintiff quotes as appearing at page 96 of the SPD. Defendant contends (D.E. 53 at 11) that page 96 of the SPD relates to short-term benefits, and further contends that page 96 does not address when the right to LTD benefits terminates or the effect of a lay-off or IRIF.

company. This sort of negative-implication-implied-inference argument might have been one the plan administrator could have reasonably adopted, but it is not the kind of argument that shows that the plan administrator was arbitrary and capricious in his actual interpretation.[8] None of the quoted language speaks to the effect of a lay-off or job termination, and it is not in conflict with the plan administrator's interpretation of Section 5.3 or the relevant documents generally. *See, e.g.*, *Mers v. Marriott Int'l Group Accidental Death and Dismemberment Plan*, 144 F.3d 1014, 1023 (7th Cir.1998) (collecting cases and teaching that SPD is relevant only where there is a direct conflict between the SPD and underlying policy).[9]

To that end, Plaintiff's claim that Becker's decision to deny his claims was "made in bad faith" is unsupported and ultimately unavailing. (D.E. 41 at 13.) At most, Plaintiff's argument

---

[8] In addition, other portions of the SPD (at page 96, the page Plaintiff repeatedly cites) confirm that an employee can be laid-off or terminated when receiving STD benefits. Specifically, the SPD at page 96 states that "[d]uring your five months of short-term disability benefits, you are treated as if you are on salary continuation. That is, your job stays intact (*subject to the needs of the business*) . . . ." (SPD at 96 (emphasis added).) Such language provides no support for Plaintiff's implied contention that one can remain employed indefinitely as an "inactive employee" or otherwise.

[9] Plaintiff suggests that *Postma v. The Paul Revere Life Ins. Co.*, 1998 WL 641335 (N.D. Ill. Sept. 10, 1998), *aff'd* 233 F.3d 533 (7th Cir. 2000), dictates that he prevail. The Court respectfully disagrees. The operative policies in *Postma* "unambiguously agree[d]" that the Company would "pay LTD benefits after the elimination period," and the benefits period extended until the employee "is no longer totally disabled" or the employee died or elected to receive retirement benefits. *Id.* at 10. In addition, the operative policies in *Postma* made clear that disability payments did not cease when an employee terminated her employment relationship with her original employer, because they allowed a disabled claimant to work at a *different* job and *still* receive benefits from the original employer. *See Postma*, 233 F.3d at 541 n.3. Plaintiff does not even argue that such a provision exists here. Simply put, *Postma* involved different plan terms, not present here, that dictated a different result in that case and do not control here.

amounts to an assertion of a different, potentially plausible, interpretation of the documents.[10] But this does not overcome the high hurdle of the arbitrary and capricious standard.[11]  Given the deference with which the arbitrary and capricious standard treats the interpretive decisions of Becker, the Court is unwilling to second guess his decision in the manner Plaintiff requests. Whatever other interpretations Becker could have adopted are not controlling, since the interpretation he did provide was reasonable.  Plaintiff has provided no evidence, and the Court cannot find any indication, that Becker's decision came even close to being "downright unreasonable."  *James*, 230 F.3d at 317.[12]

---

[10]  Plaintiff's demonstration that he has standing under ERISA is, with all respect, the slaying of a straw man.  As Defendant and the plan administrator explained, standing to sue and entitlement to relief on the merits—under any standard of review, much less the arbitrary and capricious one—are distinct things.  As explained herein, in this Court's view at least, Plaintiff has not shown his entitlement to relief on the merits on Count I.

[11] Plaintiff supplemented his statement of additional facts with an affadavit claiming that while he was on short-term disability leave, he continued to pay for long-term disability coverage under the Xerox Corporation Long-Term Disability Income Plan.  (D.E. 50 ¶ 5.)  Defendant maintains that this statement is inaccurate, as the document Plaintiff cites actually refers to a "benefit allowance" that included non-optional coverage under the Plan.  (D.E. 55 at 1.)  The accuracy of Plaintiff's evidence is questionable, but ultimately inconsequential.  To the extent Plaintiff paid any portion of the cost of coverage, that coverage he received must be consistent with the Plan and all of its terms.  The Plan made clear that Plaintiff's benefits extended only so far as his employment; when his employment terminated, so did his benefits.  As a result, any benefits he was entitled to by paying for coverage while on short-term disability, a proposition that this Court marks as questionable and need not rule on presently, was extinguished along with all of his other benefits, pursuant to the Plan, at the time of his termination.

[12] Plaintiff signed a general release that the plan administrator found was another independent basis to deny Plaintiff's claim.  (D.E. 13, Attachment 1 at 0090 ("Even if you had otherwise been eligible under the LTD Plan, which you were not, such release constitutes a valid basis for denial of benefits.").)  As Defendant points out, this alternative basis for the plan administrators's ruling precludes summary judgment in Plaintiff's favor and would have provided another avenue for Defendant to attempt to support the plan administrator's ruling.  The Court need not resolve whether the release-ruling was correct or not an abuse of discretion. However, the Court notes that Defendant's position vis-a-vis the release appears to be strong.

2.      Estoppel Argument

Plaintiff also makes an argument that Xerox should be estopped from denying Plaintiff's

claims for LTD benefits. (D.E. 41 at 15.) In essence, Plaintiff's claim is that the salary

continuation form and short-term disability plan stated that Plaintiff would continue to be eligible

for benefits under all of the Xerox Plans as an "inactive employee," and Plaintiff relied on those

representations. (*Id*. at 15-16.) Defendant disagrees, maintaining first that this argument should

not be considered, since the issue was not raised in Plaintiff's claim for benefits or during his

appeal, and hence Becker did not have the opportunity to consider the argument. (D.E. 53 at 12.)

Alternatively, Defendant contends that estoppel is not applicable in this case because there are no

relevant ambiguities or misrepresentations in the provision in question, no evidence that the

statement was deliberately misleading (even if there is a misrepresentation), and no indication

that Plaintiff's detrimentally relied on the alleged misrepresentations in any event. (*Id*. at 13.)

To prevail on an estoppel claim under ERISA, the Court ordinarily requires that a

plaintiff show (1) a knowing misrepresentation; (2) that was made in writing; (3) with reasonable

reliance on that misrepresentation by the plaintiff; (4) to the plaintiff's detriment. *See Coker v.*

---

Plaintiff signed a specifically-worded release, releasing Xerox and all Xerox benefit plans from
"any and all claims," even if he "[didn't] know about the claim" concerning, *inter alia*, the
termination of his employment, and the release referenced, *inter alia*, claims arising under
ERISA. (*Id.* at 00100.) The Seventh Circuit has emphasized the validity of a release *that is
broadly worded,* by which "the plaintiff is giving up the right to sue that she might otherwise
have on claims related to her employment that could arise under any law." *Wagner v.
Nutrasweet Co.*, 95 F.3d 527, 533 (7th Cir. 1996). To be sure, Plaintiff notes that he was on pain
medication during the time period at issue, but he had over six weeks to review the release and to
seek counsel if he so choose. (Indeed, the release expressly acknowledges that Plaintiff had time
to review the issues at hand and to seek counsel if he chose. (D.E. 13, Attachment 1, at 00101.).)
The person who reviewed the release with Plaintiff testified to the effect that Plaintiff appeared
lucid at the time the release was signed. (*See* D.E. 53 at 5-6.) Again, however, the Court need
not pass on the validity of the release at this juncture to issue this opinion.

*TWA*, 165 F.3d 579, 585 (7th Cir. 1999). However, the Seventh Circuit has found an exception when plan documents are ambiguous or misleading, in which case other representations, usually oral, may be considered to determine the meaning of the documents. *See Vallone v. CNA Financial Corp.*, 375 F.3d 623, 639 (7th Cir. 2004); *Bowerman v. Wal-Mart Stores*, 226 F.3d 574, 588 (7th Cir. 2000). In any event, the Seventh Circuit teaches that there is a "narrow scope" to estoppel claims; "only extreme circumstances justify such claims." *Vallone*, 375 F.3d at 639; *see also Sandstrom v. Cultor Food Science, Inc.*, 214 F.3d 795, 797 (7th Cir.2000); *Coker*, 165 F.3d at 585.

Defendant first argues that Plaintiff never presented his estoppel claim to the plan administrator and thus failed to exhaust available administrative remedies. As a result, Defendant argues, it is waived.

The principle of requiring administrative exhaustion of ERISA claims with a plan administrator is well known Seventh Circuit precedent. *See*, *e.g.*, *Stark v. PPM American, Inc.*, 354 F.3d 666, 671 (7th Cir. 2004) (collecting cases); *Fritcher v. Health Care Serv. Corp.*, 301 F.3d 811, 815 n.3 (7th Cir. 2002) ("This circuit has long recognized that district courts have discretion to require administrative exhaustion, and that we will overturn a district court's decision only for an abuse of discretion.") (collecting cases). The Seventh Circuit has instructed that the requirement "promot[es] non-adversarial dispute resolution," and promotes the compilation of a complete record in preparation for judicial review. *Gallegos v. Mt. Sinai Medical Ctr.*, 210 F.3d at 803, 808 (7th Cir. 2000); *see also Zhou v. Guardian Life Ins. Co.*, 295 F.3d 677, 679 (7th Cir. 2002) (explaining that the requirement of administrative exhaustion furthers the goals of "minimizing the number of frivolous lawsuits" and "enables the preparation

of a more complete factual record for judicial review," and that a decision to require

administrative exhaustion will not be reversed unless "downright unreasonable") (internal

quotations and citations omitted); *Lindemann v. Mobil Oil Corp.*, 79 F.3d 647, 650 (7th Cir.

1996) (explaining various reasons for requiring exhaustion).

In this instance, there is no dispute that Plaintiff did not present his estoppel argument to

the plan administrator. If presented, the argument might have led to an informal resolution of the

matter, as the administrative exhaustion requirement is designed to promote. Furthermore, the

estoppel argument depends on factual and interpretive issues that are intertwined with the plan

administrator's assessment of the plan documents, and the plan administrator's resolution of

those issues would have been entitled to substantial deference.

Plaintiff asserts that administrative exhaustion is not required, citing only one case (D.E.

57 at 8)—a Supreme Court decision that deals only with Social Security Appeals, *Sims v. Apfel*,

530 U.S. 103 (2000). *Sims* does not purport to speak to ERISA cases; and it also is expressly

predicated on the notion that SSA proceedings are not adversarial, as the ALJ-adjudicator is

under the duty to develop both side's facts and arguments (*id.* at 110-111). (In this case, Plaintiff

was represented during the administrative review proceedings by his own retained counsel.)

*Sims* did not question the basic principle that "[i]n most cases, an issues not presented to an

administrative decisionmaker cannot be argued for the first time in federal court." *Id.* at 112

(O'Connor, J., concurring in part and concurring in the judgment).[13] Plaintiff has provided no

support for his position beyond *Sims*—indeed, Plaintiff states that "there is case law requiring a

Plaintiff to exhaust all issues at the administrative level" (D.E. 57 at 8), although he does not

---

[13] Justice O'Connor provided the fifth vote for the result in the case.

elaborate on this concession—and *Sims* does not support Plaintiff's desired result. More important, this Court's own research (attempting to explore Plaintiff's apparent concession) has uncovered the Seventh Circuit's recent decision in *Stark v. PPM America, Inc.*, 354 F.3d 666 (7th Cir. 2004), which affirmed the district court's refusal to review an ERISA claim based on a theory not presented in the administrative proceedings. *See id.* at 672 ("[Plaintiff] also argues that he is entitled to a bonus. He says the plan mandated a bonus. But his failure to exhaust the plan procedures precludes our consideration of this claim under that theory."). Given all of these factors, the Court finds that Plaintiff has failed to properly exhaust his estoppel claim.

Moreover, and independently, even if this Court were to consider the merits of Plaintiff's estoppel claim, he would not prevail. First, there is no material fact at issue regarding whether Defendant made a *knowing* misrepresentation. Plaintiff has not even alleged that Defendant did so.[14] Also, the Plan does not appear to have been ambiguous or misleading. Section 5.3 is clear as to when eligibility for LTD benefits terminates, and the SPD provision cited and general release language do not speak to the effect of a lay-off and are not in any direct conflict with the plan document. *See*, *e.g.*, *Mers*, 144 F.3d at 1023 (collecting cases and explaining that direct conflict is required). Consequently, no material fact exists that would make Plaintiff's estoppel claim viable.

Lastly, and perhaps most importantly, Plaintiff makes no serious allegation that he detrimentally relied on any supposed misrepresentations. In this regard, Plaintiff does not

---

[14] Plaintiff also alleges that Alan Mantay, the person who conducted his exit interview, never told Plaintiff that his termination would affect his rights to any LTD benefits. But caselaw teaches that silence is not equal to a misrepresentation absent a duty to speak (which Plaintiff does not allege). *See Plumb v. Fluid Pump Serv., Inc.*, 124 F.3d 849, 856 (7th Cir. 1997).

provide any evidence in his Rule 56 papers that he actually subjectively relied at all on any of the alleged misrepresentations or omissions. This alone would seem to be fatal to a claim of detrimental reliance. In addition, and independently, Plaintiff does not make any credible allegation that he *detrimentally* relied on any supposed misrepresentations, either. With respect to detriment, Plaintiff maintains only that he "would have undoubtedly reiterated his disabled status and insisted on a clarification of his rights" if he had been aware that his layoff terminated his LTD benefits. (D.E. 57 at 9.) However, even if Plaintiff had *insisted* on a clarification, it is clear, from the plan administrator's decision in this case, that the clarification would not have helped him and he still would have been subject to the IRIF, of which he was informed long before any request for clarification would have occurred. Moreover, this Court has found that the plan administrator's decision on the merits concerning the interpretive question should be affirmed because it was not arbitrary and capricious. Under these circumstances, Plaintiff has not identified any cognizable detrimental reliance, as he must, to ground a successful estoppel claim. For all of these reasons, Plaintiff's claim that Defendant be estopped from claiming he was ineligible for LTD benefits is denied.

Given the discretion accorded to the plan administrator and the nature of his task, this Court holds that Becker's conclusions were neither arbitrary nor capricious. Therefore, as to Count I of Plaintiff's Complaint, Defendant's Motion for Summary Judgment is granted and Plaintiff's Motion for Summary Judgment is denied.

B.      Count II: Penalty for Failure to Provide Plan Documents

Section 1132(c)(1) of ERISA requires plan administrators to provide, upon written request of a plan participant or beneficiary, a copy of the latest summary plan description, plan

description, or other instruments under which the plan is established or operated "by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request." 29 U.S.C. § 1132 (c)(1)(2004).[15] Section 1132 (c)(1) establishes a $110 a day penalty for failure to do so. 29 U.S.C. §1132(c); 29 C.F.R. § 2575.502(c)-1. Plaintiff asserts two occasions for which a penalty would be appropriate: in March of 2002, Ms. Glaser failed to provide information regarding his LTD benefits after he requested information from the Human Resources Department at Xerox; and (2) in April of 2003 (D.E. 41 at 17), when Plaintiff requested that Becker provide LTD plan documents and benefits. With respect to this second request, Plaintiff asserts that Becker did not provide any documents until May 28, 2003. (*Id*. at 17-18.)

Defendant disagrees with Plaintiff's contentions. Specifically, Defendant argues that any March 2002 request was inadequate because the letter to Ms. Glaser did not specifically request LTD Plan documents. (D.E. 53 at 16.) Furthermore, Defendant maintains that since Plaintiff's request was addressed to the Human Resources Department and not the plan administrator, Section 1132(c)(1) by its terms does not apply. As to Plaintiff's letter to Becker in 2003,

---

[15] Specifically, § 1132(c)(1) provides:

> Any administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . by mailing the material requested to the last known address of the requesting participant of beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $110 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

29 U.S.C. § 1132(c)(1); 29 C.F.R. § 2575.502(c)-1.

Defendant claims that Plaintiff did, in fact, receive the information he requested, and that the letter to Becker did not request the information but rather asked Becker to "forward all of the aforementioned documents to the appropriate person at Xerox so that [Plaintiff] may perfect his claim for long-term disability benefits." (*Id.* at 16-17 (citing D.E. 13, Attachment 1 at 0001).) Defendant also repeatedly asserts that Plaintiff has suffered no material detriment from any late document delivery and does not allege bad faith so the Court should exercise its discretion to find that no penalty would be warranted even if the claim were otherwise proven.

The purpose of Section 1132(c)(1) of ERISA "is not so much to penalize as it is to induce plan administrators to comply with the notice requirements" and a participant's request for information. *Leo v. Laidlaw, Inc.*, 38 F. Supp. 2d 675, 679 (N.D. Ill. 1999) (citing *Winchester v. Pension Comm. of Michael Reese Health Plan, Inc.*, 942 F.2d 1190, 1193 (7th Cir. 1991)). Thus, whether or not sanctions are awarded is a matter in the Court's discretion. 29 U.S.C. § 1132 (c)(1); *see also Harsch v. Eisenberg*, 956 F.2d 651, 662 (7th Cir. 1992). When exercising its discretion, a court may, but is not required to, consider whether the failure to provide documentation prejudiced the plan beneficiary. *See Harsch*, 956 F.2d at 662.

Plaintiff first requests statutory damages based on the acts of Ms. Glaser (who is an attorney in the general counsel's office at Xerox) in not providing relevant plan documents to Plaintiff in a timely manner. Plaintiff cites a letter his lawyer sent to Ms. Glaser on March 26, 2002, which states that it is meant to "confirm that you [Ms. Glaser] will forward to me all of the documents which contain the language entitling my client to both short term and long term group disability with your company." (D.E. 13, Attachment 1 at 0008.) Plaintiff alleges he "could have assumed" that Ms. Glaser was acting as counsel for the plan administrator. (D.E. 57 at 10.)

25

Apparently, Ms. Glaser became involved when she was forwarded a copy of a previous letter, sent by Plaintiff's former counsel to the Human Resources Department on March 5, 2002, which requested a "complete explanation of what [Plaintiff's] disability benefits [were]" at the time. (D.E. 13, Attachment 1 at 0006.) Defendant responds that since neither Ms. Glaser nor the Human Resources Department are part of the "Plan Administrator," Section 1132(c) does not apply by its terms. (D.E. 53 at 16.)

Nonetheless, as Plaintiff points out, Seventh Circuit caselaw suggests that Plaintiff might be able to ground a successful Section 1132(c)/estoppel claim in this setting.[16] In *Jones v. UOP*, 16 F.3d 141 (7th Cir. 1994), Judge Posner stated that a plaintiff would likely be able to prevail on a Section 1132(c)/estoppel claim if he could show that the company's lawyer indicated that he or she would provide plan documents and that the plaintiff need not direct requests to the plan administrator. *Id.* at 144. Reading the ambiguity in the factual record in Plaintiff's favor, it is at least possible that he could show a violation of *Jones* such that he would be eligible to argue for statutory damages. Furthermore, given the limited factual presentations, the Court cannot determine whether such damages would be appropriate.[17]

---

[16] There is significant factual ambiguity regarding this claim—in no small part because there is no direct testimony from the author of the letter (*i.e.*, Plaintiff's former counsel) about the alleged conversations in which Ms. Glaser supposedly agreed to provide documents. But Defendant has raised no hearsay or other evidentiary objection to the March 26, 2002 letter, and the letter at least arguably can be read to support Plaintiff's claim. At this stage, the Court will read the ambiguity in the record in Plaintiff's favor and against a grant of summary judgment on this claim in Defendant's favor.

[17] Neither party—nor, as best the Court can tell, the caselaw—has addressed the question of whether the ERISA plan in question (*i.e.*, Defendant) can fairly be expected to pay for any alleged misdeeds of a corporate attorney at Xerox who is seemingly unaffiliated with the Plan and its finances. Presumably, Xerox Corporation itself would be the party that the statute would seek to deter from failing to timely respond to document requests that were not directed, as the

Second, Plaintiff contends that he also might be able to ground a successful claim for statutory damages based on an April 4, 2003, letter mailed by Plaintiff to Becker that contained attachments that apparently requested documents that were not provided until late May 2003. (D.E. 13, Attachment 1 at 0001.)  Evidence on this score also is somewhat muddy: there is no evidence as to when the plan administrator received the letter, although it appears that the letter was sent via certified mail on or about April 4, 2003.  (*Id.*)  Since the mail had to travel from Chicago to Connecticut, one might fairly proceed on the understanding that it did not arrive until roughly April 10.  Assuming the request was valid, Becker had until May 10 to send the information back to Plaintiff's attorney.  The record is devoid of any indication concerning when Becker mailed the information, or how it was mailed.  All that seems clear is that Plaintiff's counsel received the information on May 28, 2003.  (D.E. 39 ¶ 61.)  While there may be a question about whether Plaintiff raised the document request with meaningful clarity by attaching *other* letters to *other* people that requested documentation, if such a request was timely made early April, there is a chance that Plaintiff may be entitled to claim additional damages beyond any available relating to the March 2002 communications.  This too precludes summary judgment.

For the reasons stated, summary judgment on Count II is denied.

C.      Count III: Plaintiff's Claim under ERISA Section 510

Section 510 of ERISA prohibits employers from frustrating their employees' attainment

_____

ERISA statute says, to the plan administrator.  In addition, one can readily imagine a situation where the ERISA plan (whose resources presumably should be directed to disabled people who qualify for benefits under plan terms) is not even *aware* of a plaintiff's request to a corporate attorney who then improperly failed to forward plan documents, so as to potentially establish a *Jones* claim.

or enjoyment of benefit rights. It provides in relevant part that "[i]t shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan. . . . or for the purpose of interfering with the attainment of any right to which the participant may become entitled under the plan." 29 U.S.C. § 1140 ("Section 510"). Thus, Section 510 of ERISA "protects employees against dismissal by employers who seek to limit costs of health benefit plans by preventing the use of such benefits." *Lindemann v. Mobil Oil Corp.*, 141 F.3d 290, 295 (7th Cir. 1998).

Plaintiff's claim is flawed in various respects. First, Plaintiff has sued the wrong defendant. In the operative complaint, the Second Amended Complaint, Plaintiff alleges that "[D]efendant terminated the [P]laintiff while he was on short-term disability; and has prevented [P]laintiff from receiving long-term disability benefits in violation of ERISA § 510. As a direct and proximate result of the foregoing, [P]laintiff was wrongfully denied benefits to which he was otherwise entitled." (D.E. 10 at 6, ¶¶ 15-16.) But Defendant—a long-term disability benefits plan—could not terminate Plaintiff (in connection with an IRIF of which Plaintiff was informed, incidentally, long before the LTD benefits application and denial).[18] Furthermore, the evidentiary record makes clear that the plan and its administrator had no involvement in Plaintiff's termination or knowledge about it. This Court need not hold that only employers can be sued under Section 510, as Defendant implicitly suggests and Plaintiff does not meaningfully challenge; if a third-party is to be sued, there must at least be a triable fact concerning the

---

[18] *See* D.E. 38 at ¶ 2 (Plaintiff was informed of the IRIF on November 1, 2001); ¶ 7 (Plaintiff applied for LTD benefits in April 2003 (citing Administrative Record at 83)).

defendant's involvement in the plaintiff's termination. Here, Plaintiff has not provided any evidence that Defendant had any role whatsoever in Plaintiff's dismissal. There is no evidence that Defendant itself terminated Plaintiff; indeed, there is strong evidence that Defendant was incapable of doing so. As discussed further below, Plaintiff's supervisor, Alan Mantay, was deposed and explained that he used a web-based assessment tool to select persons who would be affected by the IRIF that was not influenced by medical status and was based on other objective performance criteria. (D.E. 53 at 19 (discussing Mantay deposition).) At that time, Mantay had no idea that Plaintiff was going on long-term disability and he assumed Plaintiff would be able to work again. (*Id.*) (Plaintiff in fact returned to work for a while after being placed on short-term disability following his unfortunate stroke before eventually ceasing to do so. (*See* D.E. 41 at 1.).) Plaintiff offers no reasonable basis to implicate the Defendant LTD plan in the termination decision in connection with the IRIF.

Second, a Section 510 violation requires proof that there was a specific intent to violate the statute and violate the Plaintiff-employee's ERISA rights. *See Lindemann*, 141 F.3d at 295; *accord Billow v. Munch Shelist Freed Denenberg Ament & Rubenstein, P.C.*, 277 F.3d 882, 892 (7th Cir. 2001). In other words, "the plaintiff must ultimately show that a desire to frustrate [the plaintiff's] attainment or enjoyment of benefit rights contributed toward the employer's decision and [the plaintiff] can avoid summary judgment only if the materials properly before the district court, construed sympathetically, allow for such a conclusion." *Lindemann*, 141 F.3d at 295. Plaintiff was afforded an opportunity to depose Plaintiff's supervisor at Xerox, and as Defendant explains, Mantay used a web-based assessment tool to assess employee performance that was unrelated to any medical considerations. (D.E. 53 at 19-20 (discussing Mantay testimony).)

Plaintiff does not even attempt to argue that Mantay did anything different.

Plaintiff appears to assert that the Plan's participation in Plaintiff's termination is demonstrated by its decision to deny long-term benefits. This assertion is unavailing—both because it is speculative and also because it appears to be factually baseless. Plaintiff did not even apply for LTD benefits until long after Xerox informed Plaintiff of the IRIF and terminated the Plaintiff, and Plaintiff has provided no documentation or reason to reject the evidence that the Plan had no role in the termination of Plaintiff's employment relationship with Xerox. The Court cannot find any issue of material fact regarding Defendant's involvement in the termination of Plaintiff.

Moreover, even if Defendant had terminated Plaintiff, Plaintiff has not provided evidence that it did so with the specific intent of preventing or retaliating for Plaintiff's use of benefits. Plaintiff's own submission of a statement of facts pursuant to L.R. 56.1 includes no allegation as to the motive for Plaintiff's termination. The only statement about the termination itself is that "[i]n November 2001 Jacobs was informed of an involuntary reduction in force, causing Jacobs to lose his job at Xerox." (D.E. 39 ¶ 46.) This also is inadequate.

Although circumstantial evidence may, in some cases, be enough to satisfy the summary judgment requirements, a plaintiff must at least provide evidence indicating there was "some basis" for believing that the prohibited intent to retaliate was present. *Lindemann*, 141 F.3d at 296. Plaintiff's allegations, speculations, and statement of facts, even taken generously in his favor, provide no reasonable basis for believing that anyone's motivation for terminating Plaintiff was retaliatory. Defendant, by contrast, has powerful evidence that the decision to terminate Plaintiff was the result of an impersonal, non-retaliatory decision to reduce its workforce, after it

utilized a web-based assessment tool that evaluated employees based on objective, performance-based criteria established by Xerox. (D.E. 53 at 19.) Given the wholesale lack of proof that those making the decision to terminate Plaintiff had knowledge of his disability status, much less an illicit intent predicated on that knowledge, the Court cannot find any issue of material fact as to Xerox's motivation for terminating Plaintiff.

Finally, Plaintiff requests that he be allowed to depose the plan administrator in connection with Count III. This request implicates Judge Keys's discovery opinion, discussed earlier, and the request was evaluated by Judge Keys in additional discovery proceedings held during the briefing on the summary judgment motions under review. After holding a hearing, Judge Keys concluded that Plaintiff's request to depose the plan administrator was improper because it was "clear that plaintiff would like to delve further into the administrator's rationale for denying the claims. Any questions regarding plaintiff's interference/retaliation claim should be addressed to the employer, not the plan administrator." (D.E. 46.) As indicated, Plaintiff already deposed his supervisor, Mantay, and he identifies no triable issue based on Mantay's testimony and any other evidence adduced in discovery. The Court has reviewed Plaintiff's discovery arguments, and rejects Plaintiff's Rule 56(f) discovery request.

For the aforementioned reasons, the Court grants Defendant's motion for summary judgment at to Count III and denies Plaintiff's cross-motion for summary judgment.

V.    <u>CONCLUSION</u>

For the reasons set forth above, Defendant's motion for summary judgment is granted in part and denied in part and Plaintiff's cross-motion for summary judgment is denied. So Ordered.

Mark Filip
United States District Judge
Northern District of Illinois


Dated: _____