IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

<table>
<tr><td>DAVID JACOBS,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Plaintiff</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>v.</td><td>)</td><td>No. 03C 3549</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>XEROX CORPORATION LONG TERM</td><td>)</td><td>Judge Filip</td></tr>
<tr><td>DISABILITY INCOME PLAN,</td><td>)</td><td>Magistrate Judge Keys</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Defendant.</td><td>)</td><td></td></tr>
</table>

**FILED**
JUL 15 2005
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

### DEFENDANT'S POST-TRIAL MEMORANDUM IN SUPPORT OF JUDGMENT FOR DEFENDANT ON PLAINTIFF'S ERISA 502(c) CLAIM

#### Background

On January 19, 2005, this Court granted the motion of Xerox Corporation Long-Term Disability Income Plan ("Defendant" or "Plan") for summary judgment on Plaintiff's claims for long-term disability benefits. The Court held that plan administrator was reasonable when he determined that Plaintiff ceased to be eligible for disability benefits upon his involuntary termination of employment from Xerox. This Court also granted Defendant's motion for summary judgment on Plaintiff's claims under ERISA § 510 holding that the Defendant plan could not be liable for Plaintiff's termination of employment because the plan had no role in the termination of Plaintiff's employment relationship with Xerox. The sole remaining claim in this case is Plaintiff's claim for statutory penalties under ERISA § 502(c), 29 U.S.C. 1132(c) This Court declined to grant either Plaintiff or Defendant summary judgment on Plaintiff's claim under §502(c) of ERISA and an evidentiary hearing was conducted.

Section 502(c) provides that the Court may award a penalty for the failure of a plan administrator to respond to a written request for certain documents:

> Any administrator . . . who fails or refuses to comply with a
>
> request for any information which such administrator is required
>
> by this subchapter to furnish to a participant or beneficiary (unless
>
> such failure or refusal results from matters reasonably beyond the
>
> control of the administrator) by mailing the material requested to
>
> the last known address of the requesting participant or beneficiary
>
> within 30 days after such request may in the court's discretion be
>
> personally liable to such participant or beneficiary in the amount
>
> of up to $100 a day [now $110 a day] from the date of such failure
>
> or refusal, and the court may in its discretion order such other
>
> relief as it deems proper.

Plaintiff contends that a failure to provided documents required to be provided under ERISA §104(b)(4), 29 U.S.C. §1024(b)(4), triggered the penalty provisions of ERISA §502(c). ERISA § 104(b)(4) requires a plan administrator to furnish a copy of plan documents upon the written request of any participant.

The purpose of ERISA § 502(c) is to induce plan administrators to respond to requests from participants. Winchester v. Pension Comm. Of Michael Reese Health Plan, 942 F.2d 1190, 1193 (7th Cir. 1991) The Seventh Circuit has cautioned:

> The statute is plain and severe and ought not be stretched beyond
>
> what is possible with the use of familiar, clear, tested,
>
> administrable doctrines – such as equitable estoppel – for
>
> preventing the evasion of legal duties.

Jones v. UOP, 16 F.3d 141, 145 (7th Cir. 1994). Even if a violation of the statute is shown, the imposition of a penalty is discretionary with the Court.

To establish his claim, Plaintiff had the burden of showing:

- He made a written request for plan documents to the plan administrator; and

- that the administrator failed to respond to the request within 30 days.

As Defendant will demonstrate below, Plaintiff failed to establish that he made a written request pursuant to ERISA § 104(b)(4).

Moreover, Plaintiff has sued only the Plan itself and not either the plan administrator or Xerox Corporation. Accordingly, even if the court finds (which it should not) that Plaintiff has proved a violation of ERISA § 502(c), the Court would have to conclude that it could and should exercise its discretion to impose the statutory penalty on the Plan. Such a conclusion would be contrary both to the plain language of the statute which imposes personal liability only on the plan administrator and to applicable case law.

### Facts

It is undisputed that an individual, Lawrence Becker, is the plan administrator for the Defendant Plan. See Amendment 2 to the Xerox Corporation Long-Term Disability Income Plan, Exhibit A to the Second Amended Complaint. It is likewise undisputed that the Summary Plan Description for the Plan advised participants of their right to obtain copies of plan documents on written request to the plan administrator. It also contained the name and address of the plan administrator.[1] (Defendant's Exhibit A)

---

[1] The individual identified in the Summary Plan Description was Patricia M. Nazematz. The address given was Xerox Corporation, 800 Long Ridge Road, P.O. Box 1600, Stamford, Connecticut 06904. Mr. Becker had replaced Ms. Nazematz as the administrator at the time of the facts at issue here, but the administrator's address had not changed.

At trial, Plaintiff identified three letters each of which he claimed provided a basis for imposing the statutory penalty under ERISA §502(c). Only one of these letters was sent to Mr. Becker.

The first was a letter dated March 26, 2002 written by Dominic Faraci, Plaintiff's former counsel, to Hermina Glaser, a lawyer in Xerox's general counsel's office. (Plaintiff's Exhibit 3) In the letter, Mr. Faraci confirmed a phone call with Ms. Glaser on March 18, 2002, in which she agreed to forward to him "all the documents which contain the language entitling my client to both short=term and long-term group disability with your company." Mr. Faraci testified that it was his understanding that Ms. Glaser was going to provide him with documents, but that he had no clear recollection of the phone call other than what was in the March 26 letter. (Tr. 16). Ms. Glaser never said to him that she was the plan administrator or that she represented the plan administrator.    (Tr. 24, 31)

The second letter was also from Mr. Faraci. It was dated November 5, 2002 and sent by certified mail to:

> Administrator of Xerox Long-Term Disability Plan
> Xerox Corporation
> 400 S. Executive Drive
> Brookfield, Wisconsin 53005

The certified mail receipt indicates the letter was received at the Brookfield office November 12, 2002. (Tr. 23-24) In the letter, Mr. Faraci stated that it was a "Formal Request" for plan documents made pursuant to ERISA §104. (Plaintiff's Exhibit 6)   There is no evidence Mr. Becker ever saw this letter.

The third letter was dated April 4, 2003 from Mark DeBofsky, plaintiff's current counsel, to Lawrence Becker, the plan administrator.[2] That letter read in its entirety:

> Please be advised that we represent David Jacobs, a former employee of Xerox Corporation. Due to a difficulty in determining the proper agent for service for the Xerox Corporation Long Term Disability Plan, we have only just been advised to contact you. Enclosed, please find correspondence between this office and Thompson Coburn, correspondence between Xerox and previous counsel, as well insurance and medical records regarding Mr. Jacobs.
>
> Please consider this letter a claim for benefits under the plan. I would appreciate it if you would forward all of the aforementioned documents to the appropriate person at Xerox so that Mr. Jacobs may perfect his claim for long-term disability benefits. I would also appreciate it if you would respond to this letter and provide the name of the proper individual to expedite the claim process.
>
> Please let me hear from you as soon as possible regarding this matter.

Among the many pages of correspondence attached was the March 26 letter to Ms. Glaser. There was no indication in the correspondence to Mr. Becker as to whether or not Ms. Glaser had provided any documents to Mr. Faraci.

It is undisputed that any document requests made were satisfied when documents were mailed to Mr. DeBofsky on May 27, 2004. The documents were received by him on May 28, 2004. (Second Amended Complaint, ¶14) Thereafter, Plaintiff submitted his claim for disability benefits to the Plan Administrator. The Plan Administrator ultimately considered and denied his claim. That decision was upheld by this Court.

### Argument

---

[2] Plaintiff has apparently abandoned the position taken at trial that a letter dated March 5, 2002 from Mr. Faraci to a human resources manager asking for a "complete explanation of what [Mr. Jacobs'] disability benefits are" constituted a request for plan documents. See Plaintiff's Exhibit 1.

A.    **None of the three letters constitutes a request for documents on which liability can be based.**

1.  **The March 26, 2002 letter.**

The March 26, 2002 letter was plainly not directed to the plan administrator, as required

by the statute. It was directed to Ms. Glaser, an attorney in Xerox Corporation's Office of the

General Counsel, who was located at the offices of Xerox Connect, Inc. in Cincinnati, Ohio.

There was no evidence that Ms. Glaser had any relationship to the plan or the plan

administrator. In an effort to get around this obvious defect, Plaintiff argues that Ms. Glaser is

estopped from denying that she (or perhaps Xerox Corporation) was the plan administrator.

Plaintiff relies on Jones v. UOP, 16 F.3d 141 (7th Cir. 1994). In Jones, the Seventh Circuit said that

it could imagine a case in which a plan sponsor would be estopped to deny that it was the

administrator. It held, however, that the case before it was not such a case:

> The district court held that, by failing to direct Jones to the
>
> Administrative Committee, the UOP legal and personnel officers
>
> with whom he corresponded "held themselves out" as the plan
>
> administrator and should therefore be treated as the plan
>
> administrator. We do not agree. The statue is plain; if a plan
>
> administrator is designated in the plan instrument, that is who has
>
> the statutory duty to respond to requests for information in timely
>
> fashion under threat of monetary penalty if he fails to do so.. . .
>
> While UOP's legal and personnel departments responded to
>
> Jones's requests they did not tell him to deal with them rather
>
> than with the Administrative Committee; for all they knew, he

was in touch with it and his dealings with them were in the nature

of prelitigation jockeying and settlement negotiations.

Id. at 144-45. Estoppel cannot be invoked, according to the Seventh Circuit, if requests are made

of officers in the legal department and they respond or delay in responding without directing

the participant to the plan administrator.

The evidence here with respect to the March 26 letter at best establishes no more than

that Mr. Faraci asked Ms. Glaser to provide documents, that she said she would do so and that

she did not. There is no suggestion that she represented that she was acting on behalf of the

plan administrator, that she told Mr. Faraci not to deal with the plan administrator or that she

did anything to block his access to the plan administrator. Plaintiff in his brief accuses Ms.

Glaser only of offering to assist in providing plan documents and failing to direct Mr. Faraci to a

different party. This is precisely the fact situation that the Jones court held fell short of an

establishing the elements of estoppel. As the Seventh Circuit stated, "if the plan designates an

administrator and the sponsor makes no effort to impede participants' access to him, we cannot

see what purposes would be served by the imposition of statutory penalties." Jones, at 145.

### 2. The November 5, 2002 Letter.

The November 5, 2002 letter likewise was not sent to Mr. Becker. It was not sent to the

Stamford, Connecticut address in the SPD.[3] Rather it was sent to Brookfield, Wisconsin and

there is no suggestion that Mr. Becker ever saw the letter. (See Tr. 32.) There is no evidence as

---

[3] There was no suggestion at the hearing that the Summary Plan Description had not been distributed to participants as required by ERISA; presumably Mr. Jacobs had received a copy. Indeed, counsel for plaintiff represented in Plaintiff's Response to Defendant's Motion in Limine that Mr. Jacobs (and Mr. Faraci) relied on statements contained in the Summary Plan Description when they requested Plan documents. Response at p. 3. Mr. Faraci testified that he had received some documents relating to his disability benefits from Mr. Jacobs, but did remember at the hearing what they were. (Tr. 29) He denied having seen the Summary Plan Description prior to the hearing. (Tr. 30)

-7-

to the identity of the person who signed the certified mail receipt, or what happened to the letter after the receipt was signed.

Section 502(c) of ERISA does not impose liability for failures to respond to requests is the failure results from matters reasonably beyond the control of the administrator. As required by ERISA, the Summary Plan Description explained how and from whom to request documents. Nonetheless, the request sent by Mr. Faraci was directed to Xerox Corporation in Brookfield, Wisconsin. If Mr. Becker never received the improperly addressed request, he cannot reasonably be expected to have responded to it. As noted above, the purpose of ERISA §502(c) is to induce plan administrators to respond quickly to participants' requests for information. Winchester v. Pension Comm. Of Michael Reese Health Plan, 942 F.2d 1190, 1193 (7th Cir. 1991). The purpose cannot be served by imposing a penalty on the basis of an improperly addressed request that was never seen by the plan administrator.[4]

### 3. The April 4, 2003 letter

Unlike the first two letters, the letter from Mr. DeBofsky dated April 4, 2003 is properly directed to the plan administrator, Lawrence Becker. This, the only properly directed letter, however, does not request plan documents. The letter, quoted in its entirety above, states that it is a claim for benefits. Nowhere does Mr. DeBofsky ask for plan documents. Plaintiff now seeks to characterize this letter as a request for documents because among the many attachments to the letter was the letter dated March 26, 2002 from Mr. Faraci to Ms. Glaser. Plaintiff suggests that Mr. Becker, after combing through the attachments, should have seized

---

[4] Defendant does not understand Plaintiff to make any estoppel argument relating to the November 5, 2002 letter. Plaintiff's estoppel argument is based solely on the actions of Ms. Glaser. Mr. Faraci did not talk to Ms. Glaser (or anyone else at Xerox Corporation) about the November 5, 2002 letter. In fact, there is no evidence Ms. Glaser even continued in the employment of Xerox Corporation as of November 5, 2002.

upon the letter to Ms. Glaser, and assumed both that the request continued to be outstanding and that Mr. DeBofsky was redirecting the request to him. A request for documents under 29 U.S.C. §1024(b) necessitates a response from the plan administrator only when it gives the administrator clear notice of what information the beneficiary desires. Anderson v. Flexel, Inc. 47 F.3d 243, 248 (7th Cir. 1995). Mr. DeBofsky's letter does not even come close to "clear notice." If Mr. DeBofsky had intended to request documents in addition to making a claim for benefits, he could and should have said so explicitly. He did not, and the failure to do so precludes the imposition of a penalty based on the April 4, 2003 letter.

**B.** **Liability cannot be imposed on the Defendant Plan under ERISA §502(c).**

Even if the Court concludes (and it should not) that one of the letters referred to above was a request that required a response, Plaintiff's claim must fail because he has sued the wrong party. Plaintiff has sued only the Plan. ERISA §502(c) permits a court to impose liability only on the plan administrator (or, in limited circumstances, someone estopped from denying she is the plan administrator).

In a case in which a plaintiff sought to impose liability under ERISA § 502(c) on a plan administrator for violation of duties imposed by ERISA on plans, the Seventh Circuit has expressly noted that Section 502(c) "refers to the duties of plan administrators, not benefit plans." Wilczynski v. Lumbermens Mutual Casualty Company, 93 F.3d 397, 405 (7th Cir. 1996). Section 502(c) cannot be used to address a violation of a duty imposed upon a benefit plan. Id. If it cannot be so used, it certainly cannot be used to impose liability on a plan.

The Third Circuit, in discussing the same issue faced by the Wilczynki court elaborated on the distinction between plans and plan administrators:

> Section 502(c) provides for personal sanctions against plan administrators for certain breaches of their statutory duties. It does not provide for sanctions against plans . . . [T]he terms

"plan" and "plan administrator" refer to two entirely distinct actors. The words "plan administrator" and "employee benefit plan" are terms of art under ERISA. Both are given specific meanings by ERISA's definition section, 29 U.S.C. § 1002 (1985). See § § 1002(1), 1002(2)(A), 1002(3) and 1002(16)(A). While "plan" refers to a variety of "plan[s], fund[s], or programs[s]," 29 U.S.C. § 1002(1), "plan administrator" is defined, with exceptions not relevant here, as "the person specifically so designated by the terms of the instrument under which the plan is operated." 29 U.S.C. § 1002(16)(A)(i). The reading Groves would have us adopt requires that we equate "plan" and "plan administrator," allowing "plan administrator" in § 502(c) to include "plan" as used in § 503 and subsection (g). Such a reading would slight[ ] the wording of the statute," *United States v. Enmons,* 410 U.S. 396, 399, 93 S.Ct. 1007, 1009, 35 L.Ed.2d 379 (1973), by ignoring the detailed definitions of these two terms. Section 502(c) authorizes the imposition of sanctions against a plan administrator only for his own failures or refusals, not those of the plan.

Groves v. Modified Retirement Plan, 803 F.2d 109, 116 (3rd Cir. 1986). Under the plain language

of ERISA §502(c), then, sanctions are permitted only for failures of the plan administrator, and

only against the plan administrator.

Plaintiff's argument that the Plan is the "alter ego" of Xerox Corporation (which he

argues is the plan administrator under his estoppel theory) completely misses the mark. A plan

cannot be the "alter ego" of a corporation; one corporation can be the alter ego of another, or a

shareholder may be the "alter ego" of a corporation. The purpose of the alter ego doctrine in

the ERISA context is to prevent a corporate business from limiting its pension fund

responsibilities by fractionalizing its business operations. Chicago District Council of

Carpenters Pension Fund, 866 F.Supp. 1113, 1115 (N.D. Ill. 1994). The cases cited by Plaintiff all

deal with this issue and have no applicability here. Even if the doctrine could be used in the

context of a benefit plan and a corporation, Plaintiff has offered no facts which would support

such use here. He simply asserts that the Plan is the alter ego of Xerox Corporation.

This Court rejected the simplistic blurring of the identity of the Plan and its sponsor suggested by Plaintiff in its decision granted summary judgment to Defendant on Plaintiff's claim seeking damagers under ERISA § 510 resulting from his involuntary termination of employment from Xerox Corporation. The Court noted there that Plaintiff had sued the wrong defendant. Jacobs v. Xerox Corporation Long Term Disability Income Plan, 356 F. Supp.2d 877, 896 (N.D. Ill. 2005). Plaintiff had been terminated by Xerox Corporation, but had sued the Plan which had no involvement in his termination.

Here again, Plaintiff has the wrong Defendant. This time Plaintiff seeks to hold the Plan liable for alleged violations by a plan administrator. By its terms, the statute permits only holding the Plan Adminstrator personally liable. It imposes no duties or sanctions on the Plan.

C.    **This Court should not exercise its discretion to impose sanctions in this case.**

Finally, even if Plaintiff had established a failure that would permit the imposition of sanctions on the Defendant Plan, this Court should not impose such sanctions. Such sanctions are, by the terms of ERISA §503, imposed only in the Court's discretion. A factor the Court may consider is whether any failure to provide documentation prejudiced the participant. Harsch v. Eisenberg, 956 F.2d 651, 662 (7th Cir. 1992). In this case, Plaintiff received the plan documents he wanted. He was permitted to submit his claim to the plan administrator after fully considering those documents. His claim was denied by the administrator after a full and fair review. This Court upheld the decision of the administrator. Plaintiff presented his case while in full possession of all necessary information and was determined not entitled to benefits. Plaintiff does not suggest that he was prejudice nor does he suggest anything that he would have done differently had he received any documentation earlier than he did. As noted above, the purpose of ERISA § 502(c) is to induce plan administrators to respond to requests from participants. Winchester v. Pension Comm. Of Michael Reese Health Plan, 942 F.2d 1190, 1193 (7th Cir. 1991). In the circumstances of this case, where the plan administrator was unaware of any alleged request for documents, sanctions cannot serve their purpose.

## CONCLUSION

Plaintiff has not established any basis for imposing liability on Defendant. For the foregoing reasons, Defendant requests that this Court enter judgment in its favor and against Plaintiff on Plaintiff's claim under ERISA §502(c).

Respectfully submitted,

CHITTENDEN, MURDAY & NOVOTNY LLC

By_____
    David F. Schmidt
    Joseph J. Hasman
    303 West Madison Street
    Suite 1400
    Chicago, Illinois 60606
    312-281-3600
    FAX  312-281-3678


THOMPSON COBURN LLP
    Richard J. Pautler
    Patricia A. Winchell
    One US Bank Plaza
    St. Louis, Missouri  63101
    314-552-6000
    FAX 314-552-7000

Attorneys for Defendant


## CERTIFICATE OF SERVICE

       The undersigned hereby certifies that a copy of the foregoing was mailed postage prepaid to Mark D. DeBofsky, Daley, DeBofsky & Bryant, 1 N. LaSalle, Suite 3800, Chicago, Illinois 60602, this 15th day of July, 2005.

- 13 -